# EXHIBIT A

## Settlement Agreement and Release

---

*In The Case Of*

**Reza Barani, Individually and on Behalf of All Others Similarly Situated,**
***v.***
**Wells Fargo Bank, N.A.**

**3:12-cv-02999-GPC-KSC**

---

**Hyde & Swigart, San Diego, California (619) 233–7770**

## AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is effective as of August 27, 2013, and is entered into by Plaintiff Reza Barani ("Plaintiff"), individually and on behalf of the Settlement Class members, and by Wells Fargo Bank, N.A. ("Defendant").    Plaintiff and Defendant are referred to collectively in this Agreement as the "Parties."

## RECITALS

1.01.   On December 18, 2012 Reza Barani filed a Complaint in the United States District Court for the Southern District of California (the "Court") entitled *Reza Barani, individually and on behalf of all others similarly situated vs. Wells Fargo Bank, N.A.,* Case No. 12 CV 2999 GPC KSC (the "*Barani* Action"). The Complaint in the *Barani* Action alleges that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by using an automatic telephone dialing system or an artificial or prerecorded voice to call or text message cellular telephones without the prior express consent of Barani and the putative class members.

1.02.    Defendant in the *Barani* Action denies all material allegations of the Complaint. Defendant specifically disputes that it transmitted any text messages to Plaintiff or putative class members without their consent, that it violated the TCPA, or that Plaintiff and putative class members are entitled to any relief from Defendant.  Defendant further contends that the *Barani* Action would not be amenable to class certification if class certification were sought be Plaintiff and opposed by Defendant.  Nevertheless, given the risks, uncertainties, burden and expense of continued litigation, Defendant has agreed to settle this litigation on the terms set forth in this Agreement, subject to Court approval.

1.03.   This Agreement resulted from good faith, arm's length settlement negotiations over many months, including an Early Neutral Evaluation Conference and a telephonic Case Management Conference before Magistrate Judge Karen S. Crawford, and a full day of mediation before Honorable Judge Leo Papas (retired).   Prior to those conferences, Defendant provided Plaintiff with  information concerning the claim, including  data regarding the number of text messages sent to putative class members..    The Parties also participated in direct discussions about possible resolution of this litigation including numerous telephonic

conferences.  Certain information provided by Defendant is subject to confirmatory discovery by Plaintiff as a condition of this Settlement.

1.04.   Based on the investigation and negotiations described above, and under the assumption that the information currently known to Plaintiff is confirmed through the additional confirmatory discovery to be conducted as described in Section 15.01 below, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and costs of further prosecution of this litigation, and the substantial benefits to be received by class members pursuant to this Agreement, that a settlement with Defendant on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class Members.

1.05.   The parties understand, acknowledge and agree that the execution of this Agreement constitutes the Settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence against any party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any party to this Agreement.  It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

1.06.   The Settlement contemplated by this Agreement is subject to preliminary and final approval by the court, as set forth herein.  This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## DEFINITIONS

2.01.   "Action" means the *Barani* Action.

2.02.   "Agreement" or "Settlement" means this Settlement Agreement and Release.

2.03.   "Approved Claims" means claims that have been timely submitted and approved for payment.

2.04.   "CAFA Notice" means the notice required by 28 U.S.C. Section 1715(b).

2.05.   "Claims Deadline" means ninety (90) days from the Settlement Notice Date.

2.06.   "Claim Period" means the 75-day period that begins on the date on which the Publication Notice is published as set forth in Section 9.04.

2.07.   "Claims Administrator" shall mean ILYM Group.

2.08.   The "Class" or "Class Members" means the following:

A..   The Class consists of all wireless phone subscribers and users within the United States of America, who received any  text message/s from Defendant in connection with, or as a result of, its send/receive money product program, who were not customers of Defendant at the time the text/s were sent, which text messages were sent during the Class Period.

B.   Excluded from the Class are Defendant, their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned, and any member of those judges' staffs and immediate families.

2.09.   The "Class List" means the list of Class Member cell phone numbers prepared by Defendant and provided as part of the settlement process to the Claims Administrator and Class Counsel.

2.10.   "Class Counsel" means Joshua B Swigart of Hyde & Swigart and Abbas Kazerounian of the Kazerouni Law Group, A.P.C.

2.11.   "Class Period" means December 18, 2008 to June 20, 2013.

2.12.   "Class Representative" means Plaintiff Reza Barani.

2.13.   "Court" shall mean the United States District Court for the Southern District of California, and the U.S. District Judge to which the *Barani* Action is assigned.

2.14.   "Effective Date" means the date when the Judgment has become final as provided in Section 14.01.

2.15.   "Final Approval Hearing" means the hearing held by the Court to determine whether to finally approve the Settlement set forth in this Agreement as fair, reasonable and adequate, sometimes referred to herein as the "Fairness Hearing".

2.16.   "Final Approval Order" means the Court's Order entered in connection with the Final Approval Hearing, substantially in the form attached hereto as Exhibit G.

2.17.   "Final Distribution Date" means the date set forth in Section 8.05(f).

2.18.   "Funding Date" means the date which is no later than ten (10) business days after the Effective Date, on which Defendant shall cause a payment to be made into the Settlement Fund Account pursuant to Section 8.04..

2.19.    "Maximum Payment" means the all-in, non-reversionary payment of Nine Hundred Fifty Thousand Dollars ($950,000.00), which shall be made by Defendant to resolve this litigation.  As set forth in this Agreement, this amount shall be used for all Settlement Costs, including administration expenses, taxes and tax-related expenses incurred by or on connection with the creation of the Settlement Fund, and incentive awards ordered by the court to be paid to the Class Representatives, any attorneys' fees, costs or expenses ordered by the Court to be paid to Class Counsel, and all amounts to be paid to Settlement Class Members under this Agreement.  Under no circumstances shall Defendant be required to pay any amount in excess of the $950,000 Maximum Payment in order to resolve the Action.

2.20.    "Notice" means the notices to be provided to Class Members as set forth in Section 9, including, without limitation, the Direct Mail Notice, the Publication Notice, the Q & A Form Notice to be posted on the website, the Press Release and the Internet Notice process described in Sections 9.01 through 9.08.  The forms of the Direct Mail Notice, the Publication Notice, and the Q & A Form Notice and the Press Release are attached hereto as Exhibits B, C, D, and E, respectively.

2.21.    "Notice Database" means the database containing Class Members' information to be provided by Defendant pursuant to Section 8.02.

2.22.    "Objection Deadline" means ten (10) days after the end of the Claims Period.

2.23.    "Opt-Out Deadline" means ten (10) days after the end of the Claims Period.

2.24.    "Preliminary Approval Order" means the Court's Order entered in connection with the Preliminary Approval Hearing, substantially in the form attached as Exhibit F.

2.25.    "Q & A Form Notice" means the long-form Question & Answer Form Notice containing questions and answers relating to the terms of the Settlement, which will be made available on the Settlement Website as described in Section 8.06 the form of which is attached hereto as Exhibit D.

2.26.    "Qualified Class Member" means a Settlement Class Member who submits a claim for monetary relief which is approved pursuant to Section 10.03.

2.27.    "Released Claims" means those claims released in Section 16.

2.28.   "Released Parties" means Defendant Wells Fargo, Bank N.A., and each of their respective past, present, and future parents, subsidiaries, affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each of their respective executors, successors, assigns, and legal representatives.

2.29.   The "Settlement Class" or "Settlement Class Members" means those persons who are members of the Class, as set forth in the Class definition in Section 2.08 above, and who do not timely and validly request exclusion from the Settlement Class.

2.30.   "Settlement Costs" means all costs incurred in the litigation by the Class and their attorneys, including but not limited to Plaintiff's attorneys' fees, their costs of suit, Plaintiff's expert or consultant fees, any incentive payments paid to Barani, notice costs, costs of claims administration and all other costs of administering the Settlement.

2.31.   "Settlement Fund" shall mean the funds to be paid by Defendant pursuant to Sections 5.01 and 5.02 below.

2.32.   "Settlement Notice" means the notice of settlement on the form attached hereto as Exhibit C, or as otherwise approved by this Court.

2.33.   "Settlement Notice Date" shall mean the date the Settlement Notices are required by the Court to be mailed to all Settlement Class Members.

2.34.   "Settlement Website" means the Internet website operated by the Claims Administrators as described in Section 9.06.

2.35.   "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* and any regulations or rulings promulgated under it.

2.36.   "Wells Fargo" or "Defendant" means Wells Fargo Bank, N.A..

## <u>BOTH SIDES RECOMMEND APPROVAL OF THE SETTLEMENT</u>

3.01.  <u>Defendant's Position on the Conditional Certification of Settlement Class.</u>

Defendant disputes that a class would be manageable or that common issues predominate over individual ones, and denies that a litigation class properly could be certified on the claims asserted in the *Barani* Action.   However, solely for purposes of avoiding the expense and

inconvenience of further litigation, Defendant does not oppose, and agrees to, certification of the Class defined in Section 2.08, for *settlement purposes only,* pursuant to Fed. R. Civ. P. 23(b)(3). Preliminary certification of the Class for settlement purposes shall not be deemed a concession that certification of a litigation class is appropriate, nor would Defendant be precluded from challenging class certification in further proceedings in the *Barani* Action or in any other action if the Settlement is not finalized or finally approved.  If the Settlement is not finally approved by the Court for any reason whatsoever, the certification of the Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in an proceedings involving Defendant.   No agreements made by or entered into by Defendant in connection with the Settlement may be used by Plaintiff, any person in the Class or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the *Barani* Action or any other judicial proceeding.

   3.02. <u>Plaintiff's Belief in the Merits of Case.</u>  Plaintiff believes that the claims asserted in the Action have merit and that the evidence developed to date support those claims.   This Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiff that there is any infirmity in the claims asserted by Plaintiff, or that there is any merit whatsoever to any of the contentions and defenses that Defendant has asserted.

   3.03. <u>Plaintiff Recognizes the Benefits of Settlement.</u>   Plaintiff recognizes and acknowledges, however, the expense and amount of time which would be required to continue to pursue the Action against Defendant, as well as the uncertainty, risk and difficulties of proof inherent in prosecuting such claims on behalf of the Class.   Plaintiff has concluded that it is desirable that the Action and any Released Claims be fully and finally settled and released as set forth in this Settlement.  Plaintiff and Class Counsel believe that the agreement set forth in this Settlement confers substantial benefits upon the Class and is in the best interests of individual Class Members.

**CLASS COUNSEL AND CLASS REPRESENTATIVES**

   4.01. <u>Class Representative And Class Counsel Appointment.</u>   For settlement purposes, and subject to Court approval, Reza Barani is appointed as the Class Representative for the

Class. The law firms of Hyde & Swigart and Kazerouni Law Group, APC are appointed as Class Counsel for the Settlement Class.

<u>**SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS**</u>

5.01.   <u>Total Payment.</u>   Wells Fargo Bank, N.A. shall pay $950,000.00, as a common fund, to settle the Action and obtain a release of all Related Claims in favor of Defendant as set forth herein.  The Maximum Payment will be used to pay Approved Claims and any Settlement Costs.   Settlement Class Members will be eligible for a cash payment, the amount of which is dependent upon the number of Approved Claims.

5.02.   <u>Amount Paid Per Claim.</u>   The amount paid per Approved Claim shall be divided among the approved claimants on a *pro rata* basis from the amount remaining in the Settlement Fund after deducting the Settlement Costs from the $950,000.00 Maximum Payment.

5.03.   <u>Qualifying for Payment.</u>   Settlement Class Members shall be entitled to submit a claim for a monetary payment if they are the subscriber or primary user of a cell phone number on the Class List as a person whose cell phone received a text message transmitted in connection with Defendant's send/receive money product during the Class Period.

5.04.   <u>The Class Size and Data.</u>   The class will consist of approximately 76,189 persons. Defendant will provide confirmation of the number as part of its effort to deliver the class data to the Claims Administrator.  Defendant will produce data to the Claims Administrator consisting of the cellular telephone numbers for Class Members that were sent text messages during the Class Period.  Claims Administrator will maintain such information confidentially.

5.05.   <u>Product Changes.</u>   Defendant represents that it changed its practices after the filing of the *Barani* action so as to no longer transmit text messages to non-customers as part of the send/receive money product.

5.06.   <u>Notice.</u>  Notice will include an effort by the Claims Administrator to implement a reverse address lookup procedure using Class Member's cellular telephone numbers and to make a single mailing to the best address derived from that search.   Additionally, one nationwide publication in USA Today will be conducted.

## ATTORNEYS' FEES, COSTS AND PAYMENT TO CLASS REPRESENTATIVES

6.01.   <u>Attorneys' Fees and Costs.</u>   Class Counsel shall move the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund.  Defendant will not object to any request by Class Counsel for attorneys' fees in an amount not exceeding twenty-five percent (25%) of the Settlement Fund, nor object to any additional amounts sought for the costs incurred by Class Counsel in litigating the *Barani* Action.   The amount of attorneys' fees and costs approved by the Court shall be paid from the Settlement Fund, and not in addition thereto. Within five (5) days of the Effective Date and after receipt of payees' completed W-9 forms, the Claims Administrator shall pay to Class Counsel the amount of attorneys' fees, costs, and expenses awarded to Class Counsel by the Court, as directed by written instructions from Class Counsel.

6.02.   <u>Payment to Class Representatives.</u>  Plaintiff/Class Representative will also ask the Court to award him incentive payments for the time and effort he has personally invested in this Action.  Defendant shall not object to such incentive payments to be paid to Barani from the Settlement Fund provided it does not exceed One Thousand Five Hundred Dollars ($1,500) subject to Court approval.  Within five (5) days of the Effective Date and after receipt of payees' completed W-9 forms, the Claims Administrator shall pay to Plaintiff's counsel the amount of incentive payments awarded by the Court, and Plaintiff's counsel shall disburse such funds.

6.03.   <u>Settlement Independent of Award of Fees, Costs and Incentive Payments.</u>   The payment of attorneys' fees, costs and incentive payments set forth in Sections 6.01 and 6.02 are subject to and dependent upon the Court's approval as fair, reasonable, adequate and in the best interests of Settlement Class Members.   However, this Settlement is not dependent upon the Court's approving Plaintiff's requests for such payment or awarding the particular amount sought by Plaintiff.   In the event the Court declines Plaintiff's request or awards less than the amount sought, this Settlement shall continue to be effective and enforceable by the Parties.

## PRELIMINARY APPROVAL

7.01.   <u>Order of Preliminary Approval.</u>  As soon as practicable after the execution of this Agreement, Plaintiff shall move the Court for entry of the Preliminary Approval Order in

substantially the form attached as Exhibit F.  Pursuant to the motion for preliminary approval, the Plaintiff will request that:

A.      the Court conditionally certify the Class for settlement purposes only and appoint Class Counsel as counsel for the Class for settlement purposes only;

B.      the Court preliminarily approve the Settlement and this Agreement as fair, adequate and reasonable, and within the reasonable range of possible final approval;

C.      the Court approve the form of Notice and find that the notice program set forth herein constitutes the best notice practicable under the circumstances, and satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;

D.      the Court set the date and time for the Final Approval Hearing, which may be continued by the Court from time to time without the necessity of further notice; and,

E.      the Court set the Claims Deadline, the Objection Deadline and the Opt-Out Deadline.

## ADMINISTRATION AND NOTIFICATION PROCESS

8.01.    Third-Party Claims Administrator.   The Claims Administrator, The ILYM Group, shall be responsible for all matters relating to the administration of this Settlement, as set forth herein.   Those responsibilities include, but are not limited to, giving notice, obtaining new addresses for returned mail, setting up and maintaining the Settlement website and toll-free telephone number, publishing one nationwide publication in USA Today, fielding inquiries about the Settlement, processing claims, acting as a liaison between Class Members and the Parties regarding claims information, approving claims, rejecting any claim where there is evidence of fraud, directing the mailing of settlement payments to Settlement Class Members, and any other tasks reasonably required to effectuate the foregoing.   The Claims Administrator will provide weekly updates on the claims status to counsel for both Parties.

8.02.    Notice Database.    To facilitate the notice and claims administration process, Defendant will provide to the Claims Administrator and to Class Counsel, in an electronically searchable and readable format a list of the cellular telephone numbers which were sent text messages for all known Class Members, as such information is contained in the reasonable

available computerized account records Defendant maintains.   Defendant will provide this information to the Claims Administrator and to Class Counsel no later than five (5) days after the date of the Preliminary Approval Order.   Thereafter the Claims Administrator shall perform a reverse directory lookup to identify the best address for each Class Member. The addresses shall be maintained along with the cell phone number and any other demographic information available for any Class Member in a single electronic file. ("The Notice Database.")  Defendant represents for settlement purposes that the estimated size of the class is 76,189 persons.  If any of the terms of this Settlement relating to the Claims Administrator's services would unreasonably hinder or delay such processes or make them more costly, the Claims Administrator shall so advise the Parties, and the Parties will accommodate the Claims Administrator to the extent necessary to carry out the intent of this Settlement Agreement.   Any personal information relating to Class Members provided to the Claims Administrator or Class Counsel pursuant to this Settlement, and the Notice Database, shall be provided solely for the purpose of providing notice to Class Members and allowing them to recover under this Settlement; shall be kept in strict confidence; shall not be disclosed to any third party; and, shall not be used for any other purpose.

8.03.   <u>Payment of Notice and Claims Administration Costs.</u>   Defendant shall pay the reasonable costs of Notice and settlement administration which are incurred prior to the creation of the Settlement Fund, and Defendant will be given credit for any such payments in funding the Settlement Fund.   The Claims Administrator shall provide an estimate of the amount of costs required to perform the reverse directory look-up, mail notice, establish the Settlement website, publish a nationwide notification in USA Today, and establish a toll-free telephone number, as well as any other initial administration costs to the Parties.   The Parties shall have the right to review and approve the estimate prior to payment. If the estimate is not approved, the Parties may consider alternate administrators. Upon approval, Defendant shall pay the estimated amount to the Claims Administrator within ten (10) days after the entry of the Preliminary Approval Order.   After that upfront payment of administration costs by Defendant, the Claims Administrator shall submit final billing to the Court at the final approval stage to request any additional expenses incurred as part of the administration to be paid out of the Settlement Funds.

Any amounts paid by Defendant for the estimated costs of administration which are not incurred by the Claims Administrator shall be used for other administration costs, or shall be deducted from future billings by the Claims Administrator.   The Claims Administrator shall maintain detailed records of the amounts spent on the administration of the Settlement and shall provide those to the Parties monthly.  At such time that Defendant funds the Settlement Fund, all amounts previously paid to the Claims Administrator by Defendant shall be deducted from the Maximum Payment, which Defendant is required to pay to create the Settlement Fund.  After Defendant has created the Settlement Fund and paid out the Maximum Payment required under this Settlement, Defendant shall have no further obligation to pay any amount under this Settlement, and any additional Settlement Costs shall be paid out of the Settlement Fund.

8.04.   Payment for Approved Claims and Remaining Settlement Costs.  Within five (5) business days after the Effective Date, Defendant shall provide funds to the Claims Administrator in an amount equal to the difference between what has been paid to that date and the full amount of the $950,000 Maximum Payment, subject to the terms of this Agreement.  The Settlement Fund shall be maintained in an interest bearing account at Wells Fargo Bank, N.A.

8.05.   Distribution of the Settlement Fund.  The Claims Administrator shall distribute the funds in the Settlement Fund in the following order and within the time period set forth with respect to each such payment:

(a)   first, no later than five (5) business days after the Funding Date, the Claims Administrator shall pay taxes and tax-related expenses, if any, or, at the Claims Administrator's discretion, it shall reserve an amount of the Settlement Fund sufficient to pay taxes and tax-related expenses as described in Section 20;

(b)   second, no later than five (5) business days after the Funding Date, the Claims Administrator shall pay to the Class Representative any incentive award ordered by the Court, as described in Section 6.02;

(c)   third, no later than five (5) business days after the Funding Date, the Claims Administrator shall pay to Class Counsel any award of attorney's fees, costs, or expenses ordered by the Court, as described in Section 6.01;

(d)      fourth, no later than twenty (20) days after the Funding Date, the Claims Administrator shall be paid for any unreimbursed costs of administration;

(e)      fifth, no later than thirty (30) days after the Funding Date, the Claims Administrator shall pay the Settlement Awards to Qualified Class Members pursuant to Section 10;

(f)      finally, on the Final Distribution Date, which is the earlier of: (i) the date as of which all the checks for the Settlement Awards have been cashed; or, (ii) two hundred ten (210) days after the date on which the last check for a Settlement Award was issued, the Claims Administrator shall pay any amount remaining in the Settlement Fund Account from uncashed Settlement checks to one or more *cy pres* recipients which are agreed upon by the Parties and approved by the Court.

## NOTICES

9.01.    <u>Mailing of Settlement Notice.</u>    The Claims Administrator shall send the Settlement Notice to each Class Member via first class mail within thirty (30) days after entry of the Preliminary Approval Order, or as soon as practicable after a reverse directory lookup is completed on the Class Member's telephone numbers. The Claims Administrator shall use the cell phone numbers provided by Defendant to obtain each Class Member's last known address, using a reverse lookup, which will provide the best notice practicable. If, and to the extent deemed necessary by Class Counsel, the last known address of Class Members may be subject to confirmation or updating as follows:

(a)      the Claims Administrator may check each address against the United States Post Office National Change of Address Database before the initial mailing;

(b)      the Claims Administrator may conduct a reasonable search to locate an updated address for any Class Member whose Settlement Notice is returned as undeliverable;

(c)      the Claims Administrator shall update addresses based on any forwarding information received from the United States Post Office; and,

(d)      the Claims Administrator shall update addresses based on any requests received from Class Members.

9.02.   <u>Re-Mailing of Returned Settlement Notices.</u>   Any Notices that are returned as non-deliverable with a forwarding address shall promptly be re-mailed by the Claims Administrator to such forwarding address.

9.03.   <u>Publication Notice.</u>   No later than thirty (30) days after entry of the Preliminary Approval Order, or as soon as practicable thereafter, the Claims Administrator shall cause a Publication Notice, substantially in the form attached hereto as Exhibit C, to be published once on a nationwide basis, in a national edition of USA Today on any day from Monday through Thursday, and to be published on the Settlement Website on the same date, and retained on the website thereafter.

9.04.   <u>Question and Answer Formal Notice.</u>   The Claims Administrator shall also post on the website a formal Question and Answer Notice ("Q & A Form Notice"), substantially in the form attached hereto as Exhibit D, which shall set forth in a question and answer format, the details of the Settlement and the rights of Class Members to participate in the Settlement, exclude themselves or object to the Settlement.

9.05.   <u>Press Release.</u>   Plaintiff will issue a neutrally worded press release, the contents of which have been agreed to in advance by all Parties, substantially in the form attached hereto as Exhibit E.   The purpose of the press release is to facilitate Class Members learning about the Settlement through Internet searches, and to provide instructions on how they may obtain additional information about the Settlement.   The press release will announce that the Action has been settled, and will include the URL for the dedicated settlement website through which Class Members can obtain relevant information.

9.06.   <u>Website Notice.</u>   By the Settlement Notice Date, the Claims Administrator shall maintain and administer a dedicated settlement website (www._____.com) containing class information and related documents, along with information necessary to file a claim, and an electronic version of the Claim Form members can download, complete and submit electronically.   At a minimum, such documents shall include the Settlement Agreement and Exhibits, the Notice, the Q & A Form Notice, the Preliminary Approval Order, a downloadable Claim Form for anyone wanting to print a hard copy and mail in the Claim Form, the operative complaint, and when filed, the Final Approval Order.

9.07.   Toll-Free Telephone Number.   By the Settlement Notice date, the Claims Administrator shall set up a toll-free telephone number for receiving toll-free calls related to the Settlement.   That telephone number shall be maintained until thirty (30) days after the Claims Deadline.   After that time, and for a period of ninety (90) days thereafter, either a person or a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the Settlement may be reviewed on the related settlement website.

9.08.   CAFA Notice.   Class Administrator shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within ten (10) days of the filing of the Preliminary Approval Motion.

## CLAIMS PROCESS

10.01.  Potential Claimants.  Each Class Member who does not timely and validly request exclusion from the Settlement as required in this Agreement shall be a Settlement Class Member and entitled to make a claim.  Each Settlement Class Member shall be entitled to make only one claim per cellular telephone number, regardless of the number of text messages received by each of cellular telephone number.

10.02.  How to Make a Claim.   In order to make a claim, a Settlement Class Member must either:

(a)     submit a claim by calling the toll-free number;

(b)     submit a claim online at the Settlement website; or,

(c)     submit the completed Claim Form received in the mail or downloaded from the Settlement website to the Claims Administrator, by mail or otherwise.

All claims must be submitted by the Claims Deadline as set forth in the Settlement Notice.  Any Claim Form postmarked after the Claims Deadline shall be deemed untimely and an invalid claim.

10.03.  How a Claim is Approved.   The claims process shall require only that the Settlement Class Member provide his or her name, a Claim Identification Number assigned to each postcard Notice, if available, and cellular telephone number.   If the claimant's cellular

telephone number matches the cellular telephone number on the Notice Database or Class List generated from Defendant's records, that claim will be approved, subject to the limitation that only one claim will be paid to each Settlement Class Member. If a Settlement Class Member submits a claim and qualifies for a monetary payment, he or she is a "Qualified Class Member". Except as necessary to resolve issues related to denied Settlement Claims pursuant to Section 11.01, or to evaluate requests for exclusion and/or respond to objections, the Claims Administrator shall not provide to Defendant, their counsel or any of their agents any identifying information obtained from the Class Members for purposes of facilitating the Class Notice, Settlement Awards, or claims administration, other than the names of person submitting Settlement Claims.

## CLAIMS REVIEW PROCESS

11.01.  <u>Review of Approved or Denied Claims.</u>  Each Settlement Class Member who does not exclude himself or herself from the Class and who makes a timely claim shall have their claim reviewed by the Claims Administrator.  The Claims Administrator shall review the claims and advise the Parties on a weekly basis, at minimum, of the claims that are approved and denied.  Class Counsel shall be entitled to contest the denial of any claims, first through meeting with the Claims Administrator, and if they are unable to resolve such issues, they may seek assistance of the Court to resolve the issues at the earliest possible date, and to attempt to have a resolution before the fairness hearing.  However, if those issues are unresolved at the time of the fairness hearing, that will not prevent the fairness hearing from going forward, with the issues to be resolved at a later date but within sixty (60) days of the entry of any order regarding the fairness hearing, including any order for final approval of the Settlement.

11.02.  <u>Mailing of Settlement Check.</u>  Settlement checks shall be sent to Qualified Class Members by the Claims Administrator via U.S. mail no later than thirty (30) days after the Effective Date.  If any Settlement checks are returned, the Claims Administrator shall attempt to obtain a new mailing address for that Settlement Class Member by taking the steps described in Section 9.01.  If, after a second mailing, the Settlement check is again returned, no further efforts need be taken by the Claims Administrator to resend the check.  The Claims Administrator shall advise Class Counsel and counsel for Defendant, of the names of the claimants whose checks are

returned by the postal service as soon as practicable.  Each Settlement check will be negotiable for one hundred eighty (180) days after it is issued.  Any funds not paid out as the result of uncashed Settlement checks shall be paid out as a *cy pres* award, to a recipient agreed to by the Parties and approved by the Court, as set forth in Section 8.05(f).  The *cy pres* recipient shall be _____.

## OPT-OUTS AND OBJECTIONS

12.01.  <u>Opting-Out of the Settlement.</u>   Any Class Members who wishes to exclude themselves from the Settlement Class ("opt-out") must advise the Claims Administrator in writing of that intent, and their opt-out request must be postmarked no later than the Opt-Out Deadline.  The Claims Administrator shall provide the Parties with copies of all opt-out requests it receives, and shall provide a list of all Class Members who timely and validly opted-out of the Settlement in their declaration filed with the Court, as required by Section 13.01.   Settlement Class Members who do not properly and timely submit an opt-out request will be bound by this Agreement and the judgment, including the releases in Section 16 below.   If more than one percent (1%) of the Class Members opt-out, Defendant has the option of voiding this Settlement and proceeding with the litigation, as provided in Sections 17.02 and 17.03 below.

A.     In the written request for exclusion, the Class Member must state his or her full name, address, and telephone number.   Further, the Class Member must include a statement in the written request for exclusion that he or she wishes to be excluded from the Settlement.

B.     Any Class Member who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement.

12.02.  <u>Objections.</u>  Any Settlement Class Member who intends to object to the fairness of this settlement must file a written objection with the Court and provide a copy to Class Counsel and counsel for Defendant by the Objection Deadline.

A.     In the written objection, the Settlement Class Member must state his or her full name, address, and telephone number, the reasons for his or her objection, and whether he or she intends to appear at the fairness hearing on his or her own behalf or through counsel. Any documents supporting the objection must also be attached to the Objection.

B.      Any Settlement Class Member who objects may appear at the Fairness Hearing, either in person or through an attorney hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement. A Settlement Class Member or his or her attorney intending to make an appearance at the Fairness Hearing must: (a) file a notice of appearance with the Court no later than ten (10) days prior to the Fairness Hearing, or as the Court may otherwise direct; and (b) serve a copy of such notice of appearance on all counsel for all Parties. Any Settlement Class Member who fails to comply with the provisions of this Section 12.02 shall waive and forfeit any and all rights to appear separately and/or to object, and shall be bound by all the terms of this Settlement, and by all proceedings, orders, and judgments in the litigation.

## FINAL JUDGMENT AND ORDER

13.01.  No later than fourteen (14) calendar days prior to the Final Approval Hearing, the Claims Administrator shall file with the Court and serve on counsel for all Parties, a declaration stating that the Notice required by the Agreement has been completed in accordance with the terms of the Preliminary Approval Order.

13.02.  If the Settlement is approved preliminarily by the Court, and all other conditions precedent to the Settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing:

A.      The Parties shall both request, individually or collectively, that the Court enter the Final Approval Order in substantially the form attached as Exhibit G, with Class Counsel filing a memorandum of points and authorities in support of the motion; and,

B.      Counsel for the Class and Defendant may file a memorandum addressing any objections submitted to the Settlement.

13.03.  At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable and adequate, whether any objections to the Settlement should be overruled, whether the fee award and incentive payments to the Class Representatives should be approved, and whether a judgment finally approving the Settlement should be entered.

13.04.  This Agreement is subject to and conditioned upon the issuance by the Court of a

Final Approval Order which grants final approval of this Agreement and:

        A.      finds that the Notice provided satisfies the requirements of due process and Fed. R. Civ. P. 23(e)(1);

        B.      finds that Settlement Class Members have been adequately represented by the Class Representatives and Class Counsel;

        C.      finds that the Settlement Agreement is fair, reasonable and adequate to the Settlement Class, that each Settlement Class Member shall be bound by this Agreement, including the releases in 16.01 and 16.04, and the covenant not to sue in Section 16.02, and that this Settlement Agreement should be and is approved;

        D.      dismisses on the merits and with prejudice all claims of the Settlement Class Members asserted against Defendant in the *Barani* Action;

        E.      permanently enjoins each and every Settlement Class Member from bringing, joining, or continuing to prosecute any Release Claims against Defendant or the Released Parties; and,

        F.      retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

## FINAL JUDGMENT

14.01.  The Judgment entered at the Final Approval Hearing shall be deemed final:

        A.      thirty (30) days after entry of the Final Judgment approving the Settlement if no document is filed within that time seeking appeal, review or rehearing of the judgment; or,

        B.      if any such document is filed, then five (5) days after the date upon which all appellate and/or other proceedings resulting from such documents have been fully terminated in such a manner as to permit the judgment to take effect in substantially the form described in Section 13.04.

## CONFIRMATORY DISCOVERY

15.01.  Class Counsel shall be entitled to conduct limited discovery to confirm the accuracy of the information provided to them during the course of the litigation and the Parties' settlement negotiations.  The purpose of that discovery shall be to confirm: (i) the total number of Class Members, *i.e.,* the number of text messages sent to cellular numbers that are not

otherwise denoted in Wells Fargo's system of record as belonging to an account holder, during the Class Period in connection with Defendant's send/receive money product program, and the process used to determine that number; and (ii) discovery regarding changes to Defendant's send/receive money product program, implemented during the Class Period for the purpose of limiting text messages transmitted to non-customers.   This discovery is to be used solely for purposes of finalizing this Settlement and, consistent with Section 17.03 below, may not be used for any purpose in the event this Agreement is terminated, or is otherwise not fully and finally approved by the Court.

15.02.  The Settlement provides for confirmatory discovery to be conducted during the approval process. Plaintiff reserves the right to void the Settlement if this confirmatory discovery reveals any substantial variance from previous discovery or other factual representations made by Defendant and relied upon by Plaintiff as the basis for the Settlement.

## RELEASE OF CLAIMS

16.01.  Released Claims.  Plaintiff and each Settlement Class Member, as well as their respective assigns, heirs, executors, administrators, successors and agents, hereby release, resolve, relinquish and discharge each and all of the Released Parties from each of the Released Claims (as defined below).   The Settlement Class members further agree that they will not institute any action of cause of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal or local government agency or with any administrative or advisory body, arising from or reasonably related to the Released Claims.   The release does not apply to class members who timely opt-out of the Settlement.

A.   "Released Claims" means any and all claims, causes of actions, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorney's fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, and regulatory promulgation (including, but not limited to, an opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of

the date of the Final Approval Order, that arise out of or related in any way to the Released Parties' use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members in connection with Defendant's send/ receive money product program, to the fullest extent that those terms are used, defined, or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* and any other statutory or common law claim arising from the use of an automatic telephone dialing system and/or artificial or prerecorded voice calls (or text messages) to cellular telephones, or pagers.

    B.    Waiver of Unknown Claims.    Without limiting the foregoing, the Released Claims specifically extend to claims that Plaintiff and Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement and the releases contained therein become effective.    This Section constitutes a waiver, without limitations as to any other applicable law, of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and similar federal and state statutes, case law, rules or regulations relating to limitations on releases.   In connection with such waivers and relinquishment, Plaintiff and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally, and forever, all Released Claims with respect to the Released Parties, and in furtherance of such intention, the releases of the Released Claims will be, and remain in effect, notwithstanding the discovery or existence of any such additional or difference facts.

    16.03.   Covenant Not To Sue.   Plaintiff agrees and covenants, and each Settlement Class Member will be deemed to have agreed and covenanted, not to sue any Released Party with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be

forever barred from doing so, in any court of law or equity, or any other form.

## TERMINATION OF AGREEMENT

17.01.  <u>Either Side May Terminate the Agreement.</u>  Plaintiff and Defendant shall each have the right to unilaterally terminated this Agreement by providing written notice of his, their, or its election to do so ("Termination Notice"), to all other Parties hereto within ten (10) calendar days of any of the following occurrences:

A.      the Court rejects, materially modifies, materially amends or changes, or declines to preliminary or finally approve the Settlement Agreement;

B.      an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated without material change by the Court on remand;

C.      any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement Agreement in a way that Plaintiff or Defendant reasonably considers material, unless such modification or amendment is accepted in writing by all Parties;

D.      the Effective Date does not occur; or

E.      any other ground for termination provided for elsewhere in this Agreement occurs.

17.02.  <u>Termination if Large Number of Opt-Outs.</u>  If, at the conclusion of the Opt-Out Deadline, more than one percent (1%) of the Settlement Class Members have opted-out of the Settlement, the Defendant shall have, at their sole and absolute discretion, the option to terminate this Agreement within ten (10) days after the Opt-Out Deadline.

17.03.  <u>Revert to Status Quo.</u>  If either Plaintiff or Defendant terminates this Agreement as provided herein, the Agreement shall be of no force and effect and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Agreement had never been executed, and any orders entered by the Court in connection with this Agreement shall be vacated.   However, any payments made to the Claims Administrator for services rendered to the date of termination shall not be refunded to Defendant.

## NO ADMISSION OF LIABILITY

18.01.  Defendant denies any liability or wrongdoing of any kind associated with the

alleged claims in the operative complaints.   Defendant has denied and continues to deny each and every material factual allegation and all claims asserted against them in the *Barani* Action. Nothing herein shall constitute an admission by Defendant of wrongdoing, or liability, or of the truth of any allegations in the *Barani* Action.   Nothing herein shall constitute an admission by Defendant that the *Barani* Action is properly brought on a class representative basis, or that classes may be certified in those actions, other than for settlement purposes.   To this end, the settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement: (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendant, or of the truth of any of the allegations in the *Barani* Action; (ii) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of Defendant in any civil, criminal or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal; and (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification.

18.02. Pursuant to Federal Rules of Evidence 408 and California Evidence Code Sections 1119 and 1152, and any similar provisions under the laws of other states, either this agreement not any related documents filed or created in connection with this Agreement shall be admissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Agreement.

## TAXES

19.01. <u>Qualified Settlement Fund.</u> The Parties agree that the account into which the Settlement Fund is deposited is intended to be and will at all times constitute a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Claims Administrator shall timely make such elections as necessary or advisable to carry out the provisions of Section 13, including, if necessary, the "relation back election" (as defined in Treas. Reg. §1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code"). It shall be the responsibility of

the Claims Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

19.02.   Claims Administrator is "Administrator". For the purpose of §1.468B of the Code and the Treasury regulations thereunder, the Claims Administrator shall be designated as the "administrator" of the Settlement Fund. The Claims Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

19.03.   Taxes Paid by Administrator. All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes shall be paid by the Claims Administrator from the Settlement Fund.

19.04.   Expenses Paid from Fund. Any expenses reasonably incurred by the Claims Administrator in carrying out the duties described in Section 20, including fees of tax attorneys and/or accountants, shall be paid by the Claims Administrator from the Settlement Fund in accordance with Section 8.

19.05.   Responsibility for Taxes on Distribution. Any person or entity that receives a distribution from the Settlement Fund pursuant to Section 8 (except for a distribution of taxes), shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution. Such taxes and tax-related expenses shall not be paid from the Settlement Fund.

19.06.   Defendant Is Not Responsible. In no event shall Defendant, or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Plaintiff, Class Members, Class Counsel or any other person or entity, and the Settlement Fund shall indemnify and hold

Defendant and the other Released Parties harmless for all such taxes and tax-related expenses (including, without limitation, taxes and tax-related expenses payable by reason of any such indemnification).

## MISCELLANEOUS

20.01.  Entire Agreement. This Agreement and the exhibits hereto constitute the entire agreement between the Parties. No representations, warranties or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement.

20.02.  Governing Law. This Agreement shall be governed by the laws of the State of California.

20.03.  Non-Waiver Of Debts/Obligations Owing By Class Members. The Parties understand and agree that this Settlement Agreement and any terms herein shall not affect in any regard any debt or obligation owed by Plaintiff or Settlement Class Member to Defendant and/or their clients, principals and their related or affiliated entities. This Settlement Agreement does not operate to waive, extinguish, terminate, reduce or affect any debt or obligation owed by Plaintiff or Class Members, and shall not impair or limit any right or cause of action or right to enforce or otherwise collect any underlying debt or amount owed to Defendant and their clients, principals and their related or affiliated entities.

20.03.  Jurisdiction. The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including the Plaintiff and all Settlement Class members, for purposes of the administration and enforcement of this Agreement.

20.04.  No Construction Against Drafter. This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any Party based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by that Party.

20.05.  Resolution of Disputes. The Parties shall cooperate in good faith in the administration of this Settlement. Any unresolved dispute regarding the administration of this Agreement shall be decided by the Court, or by a mediator upon agreement of the Parties.

20.06.  Counterparts. This Agreement may be signed in counterparts and the separate

signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

20.07. <u>Time Periods.</u> The time periods and dates described herein are subject to Court approval and may be modified upon order of the Court or written stipulation of the Parties.

20.08. <u>Authority.</u> Each person executing this Settlement Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Agreement.

20.09. <u>No Oral Modifications.</u> This Agreement may not be amended, modified, altered or otherwise changed in any manner, except by a writing signed by a duly authorized agent of Defendant and Plaintiff, and approved by the Court.

20.10. <u>Notices.</u> Unless otherwise stated herein, any notice required or provided for under this Agreement shall be in writing and may be sent by electronic mail, fax or hand delivery, postage prepaid, as follows:


    If to Class Counsel:

        Joshua B. Swigart, Esq.

        Hyde & Swigart

        411 Camino Del Rio South, Suite 301
        San Diego, CA 92108

        Telephone: (619) 233-7770
        josh@westcoastlitigation.com

        Abbas Kazerounian, Esq.

        The Kazerouni Law Group, APC
        2700 North Main Street, Ste. 1000
        Santa Ana, CA 92705
        Telephone: (800) 400-6808
        ak@kazlg.com

If to counsel for Settling Defendants:

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed this 27th day of August, 2013.

Defendant Wells Fargo Bank, N.A.

By

Its Authorized Representative

[Name] Shannon Gausman

Reza Barani, Plaintiff and Class
Representative

APPROVED AS TO FORM:

Joshua B. Swigart, Esq.
Hyde & Swigart
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone:      (619) 233-7770

Abbas Kazerounian, Esq.
The Kazerouni Law Group, APC
2700 North Main Street, Ste. 1050
Santa Ana, CA 92866
Telephone: (800) 400-6808

Class Counsel

Eric J. Troutman
Severson & Werson
One Embarcadero Center
Suite 2600
San Francisco, CA 9411

For Wells Fargo Bank, N.A.,

07685.1208/2843851.1