1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

8
9

| REZA BARANI, individually and on behalf of all others similarly situated, | CASE NO. 12CV2999-GPC(KSC) |
|---|---|
| Plaintiff, | **ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT; AND CERTIFYING PROVISIONAL SETTLEMENT CLASS; AND PROVIDING FOR NOTICE TO THE SETTLEMENT CLASS AND SETTING FINAL APPROVAL HEARING** |
| vs. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | [Dkt. No. 21.] |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

From December 18, 2008 to June 20, 2013, Defendant Wells Fargo sent unsolicited text messages to non-Wells Fargo customers in connection with its send/receive money product program. Plaintiff alleges that Wells Fargo violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by sending text messages to non-Wells Fargo customers without their prior express consent, using an automatic telephone dialing system ("ATDS").

Plaintiff initiated this Action on December 18, 2012. The Complaint alleges (1) negligent violation of the TCPA; and (2) knowing and/or willful violation of the TCPA. Plaintiff's claims were brought on behalf of a class of individuals who are not Wells Fargo customers, yet received text messages on their cellular telephones from Wells Fargo, via an ATDS, in connection with its send/receive money product program, during the class period. Plaintiff sought $500 per negligent violation and

1   $1500 per willful violation, as well as injunctive relief.

2       Presently before the Court is Plaintiff's Motion for Preliminary Approval of a

3   Class Action Settlement and Certification of Settlement Class.  (Docket No. 21.)

4   Defendant does not oppose this Motion.  (Docket No. 21.)

5                                    **DISCUSSION**

6       Once parties reach a settlement agreement prior to class certification, the court

7   must "peruse the proposed compromise to ratify both the propriety of the certification

8   and the fairness of the settlement." <u>Stanton v. Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir.

9   2003).  The court must (1) assess whether a class exists, and (2) determine whether the

10  proposed settlement is "fundamentally fair, adequate, and reasonable."  (<u>Id.</u>) (internal

11  quotations omitted.)   Here, the Court will first examine the propriety of the class

12  certification, then the fairness of the Settlement Agreement, followed by the questions

13  of Class Counsel and Class Notice.

14  **I.     CLASS CERTIFICATION**

15      A plaintiff seeking a Rule 23(b)(3) class certification must: (1) satisfy the

16  prerequisites of Rule 23(a); and (2) satisfy the requirements of Rule 23(b)(3).  Here,

17  the Parties seek provisional certification for settlement purposes only of the following

18  class: "The Class consists of all wireless phone subscribers and users within the United

19  States of America, who received any text message/s from Defendant in connection

20  with, or as a result of, its send/receive money product program, who were not

21  customers of Defendant at the time the text/s were sent, which text messages were sent

22  during the Class Period." (Settlement Agreement ("SA") § 2.08(A).)  "Excluded from

23  the Class are Defendant, their parent companies, affiliates or subsidiaries, or any

24  employees thereof, and any entities in which any of such companies has a controlling

25  interest; the judge or magistrate judge to whom the Action is assigned, and any member

26  of those judges' staffs and immediate families."  (SA § 2.08(b).)

27      **A.     Rule 23(a) Requirements**

28      Rule 23(a) establishes four prerequisites for class action litigation: (1)

1   numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed.

2   R. Civ. P. 23(a); see also Stanton, 327 F.3d at 953.  The Court will examine each

3   prerequisite in turn.

### 1. Numerosity

5   The numerosity prerequisite is met if "the class is so numerous that joinder of all

6   members is impracticable." Fed. R. Civ. P. 23(a)(1).  In the present case, Wells Fargo

7   has identified 76,189 Class Members.  (SA § 5.04.)  Class Members are too numerous

8   to be joined as plaintiffs in this Action.  Accordingly, the numerosity requirement is

9   met.

### 2. Commonality

11   The commonality requirement is met if "there are any questions of law or fact

12   common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is

13   construed "permissively."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir.

14   1998).   Not all questions of law and fact need to be common, but rather "[t]he

15   existence of shared legal issues with divergent factual predicates is sufficient, as is a

16   common core of salient facts coupled with disparate legal remedies within the class."

17   Id.  In addition, commonality requires that class members "have suffered the same

18   injury." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2001).

19   Here, the proposed Class Members' claims stem from the same factual

20   circumstances, in that Wells Fargo sent non-customers text messages; using an ATDS,

21   without their prior express consent.  There are also several common questions of law,

22   including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells

23   Fargo willfully or knowingly violated the TCPA; and (3) whether Wells Fargo had

24   prior express consent for the text messages.   Accordingly, the commonality

25   requirement is met.

### 3. Typicality

27   Typicality requires that "the claims or defenses of the representative parties [be]

28   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The Ninth

1    Circuit interprets typicality permissively.  <u>Hanlon</u>, 150 F.3d at 1020.  The

2    representative claims are "typical" if they are "reasonably co-extensive with those of

3    absent class members," though they "need not be substantially identical." <u>Id.</u>; <u>see also</u>

4    <u>Cal. Rural Leal Assistance, Inc. v. Legal Servs. Corp.</u>, 917 F.2d 1171, 1175 (9th Cir.

5    1990).  The named plaintiff must be a member of the class they seek to represent and

6    they must "possess the same interest and suffer the same injury" as putative class

7    members.  <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 156 (1982) (internal

8    quotations omitted).  It is sufficient for the plaintiff's claims to "arise from the same

9    remedial and legal theories" as the class claims.  <u>Arnold v. United Artists Theatre Cir.,</u>

10   <u>Inc.</u>, 158 F.R.D. 439, 449 (N.D. Cal. 1994).

11       Here, Plaintiff's claims arise from the same factual basis as that of the class: text

12   messages sent by Wells Fargo, to non-Wells Fargo customers, on their cellular

13   telephones, via an ATDS, without their prior express consent.  In addition, Plaintiff's

14   claims are based on the same legal theory as that applicable to the class: that the text

15   messages violated the TCPA.  <u>Wehner v. Syntex Corp.</u>, 117 F.R.D. 641, 644 (N.D. Cal.

16   1987).  Accordingly, the typicality requirement is met.

17                    **4.    Adequacy of Representation**

18       Representative parties must be able to "fairly and adequately protect the interests

19   of the class." Fed. R. Civ. P. 23(a)(4).  Representation is adequate if the plaintiff: (1)

20   "[does] not have conflicts of interest with the proposed class" and (2) is "represented

21   by qualified and competent counsel." <u>Dukes v. Wal-Mart, Inc.</u>, 509 F.3d 1168, 1185

22   (9th Cir. 2007).  At the heart of this requirement is the "concern over settlement

23   allocation decisions." <u>Hanlon</u>, 150 F.3d at 1020.

24       Plaintiff and Class Counsel have no conflicts of interest with other Class

25   Members.  For the purposes of settlement, Plaintiff's claims are typical of those of

26   other class members. (Kazerounian Decl. ¶ 36; Swigart Decl. ¶ 30; Barani Decl. ¶ 7.)

27   Plaintiff and the Class Members share the common goal of protecting and improving

28   consumer and privacy rights.  Plaintiff and Class Counsel have been prosecuting this

1  action vigorously on behalf of the class.  (Swigart Decl.  ¶¶ 3-6.)

2  In addition, Class Counsel have experience prosecuting class actions relating to
3  privacy and consumer rights, including TCPA action.  (Id. ¶ 27.)  Joshua B. Swigart
4  was admitted to the State Bar of California in 2003 and is a founding partner at Hyde
5  & Swigart.  (Id. ¶ 25.)  Mr. Swigart practices exclusively in the area of consumer rights
6  litigation, primarily in the area of fair debt collections, defense of debt collections
7  lawsuits, and class action litigation under the TCPA.  (Id. ¶ 26.)  Abbas S. Kazerounian
8  was admitted to the State Bar of California in 2007.  (Kazerounian Decl. ¶ 25.)  He is
9  a founding partner of Kazerouni Law Group, APC.  (Id. ¶ 28.)  Mr. Kazerounian has
10 been appointed class counsel in several class actions brought under the TCPA.  (Id. ¶
11 32.)  In addition, he has experience in commercial litigation and large-scale products
12 liability litigation.  (Id. ¶27.)  Class Counsel are qualified to conduct this litigation.

13 For the reasons stated above, Plaintiffs have satisfied the prerequisites of Rules
14 23(a).

15 **B.    Rule 23(b)(3) Requirements**

16 Rules 23(b)(3) requires the court to find that: (1) "the questions of law or fact
17 common to class members predominate over any questions affecting only individual
18 members" ("predominance"); and (2) "a class action is superior to other available
19 methods for fairly and efficiently adjudicating the controversy" ("superiority").

20 **1.    Predominance**

21 The predominance inquiry tests "whether proposed classes are sufficiently
22 cohesive to warrant adjudication by representation."  Hanlon, 150 F.3d at 1022
23 (internal quotations omitted).  This analysis requires that common questions of law and
24 fact "present a significant aspect of the case and [that] they can be resolved for all
25 members of the class in a single adjudication."  Id. (Internal quotations omitted.)  The
26 relevant inquiry is whether issues "subject to generalized proof predominate over those
27 issues that are subject only to individualized proof."  Dilts v. Penske Logistics, LLC,
28 267 F.R.D. 625, 634 (S.D. Cal. 2010) (internal quotations and alterations omitted).

Here, Plaintiff's claims present common questions of law and fact, as explained above. The central inquiry is whether Wells Fargo violated the TCPA by sending text messages to the Class Members. Accordingly, the predominance requirement is met.

### 2. Superiority

The superiority requirement focuses on the determination of "whether the objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023. The class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, considerations of judicial economy favor litigating a predominant common issue once in a class action, instead of many times in separate lawsuits. In addition, because of the small individual claims of Class Members, it is unlikely that individual actions will be filed. If each of the 76,189 eligible claimants filed claims, they would receive approximately $7 each. If only 5% of the eligible claimants filed claims, they would receive approximately $156 each. Accordingly, the superiority requirement is met.

For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule 23(b)(3). The Court GRANTS preliminary certification of the class for the purposes of the proposed settlement. The Court however, may review this finding at the Final Approval Hearing.

## II.   THE SETTLEMENT

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Stanton, 327 F.3d at 959 (internal quotations omitted). In making this determination, a court may consider: (1) the strength of the plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed

and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members to the proposed settlement." See id. (internal quotations omitted).   Moreover, the settlement may not be the product of collusion among the negotiating parties.   In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

Because some of these factors cannot be fully assessed until the Court conducts the Final Approval Hearing, "a full fairness analysis is unnecessary at this stage." See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations omitted).   At the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible approval" and thus, whether the notice to the class and the scheduling of formal fairness hearing is appropriate.   Id. at 666.

**A.    The Strength of Plaintiff's Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout the Trial**

Both sides recognize that there are risks to continuing litigation of this action. Class Counsel understands that there are uncertainties associated with complex class action litigation as well as the risk that a contested certification motion would not be granted.   Wells Fargo will likely contend that the requirement of "generalized proof" of the absence of consent cannot be met because "consent" cannot be ascertained without an individual inquiry into how Wells Fargo obtained each class member's cellular telephone number, and the circumstances surrounding each text. See Gene & Gene LLC v. Biopay, LLC, 541 F.3d 318, 327-29 (5th Cir. 2008).   In addition, the law interpreting the TCPA and its consent requirement has been under flux, making it difficult for Class Members to prove lack of consent on a class-wide basis.   Moreover, Wells Fargo has also strongly contested the allegation regarding the use of an ATDS.

On the other hand, Wells Fargo also understands the risks of litigation.   Even if only a small percentage of Class Members recover damages, a large demand award

[12CV2999-GPC(KSC)]

1   would result.  Further litigation would be very expensive.  Wells Fargo has expended

2   considerable effort to ascertain the 76,189 unique non-Wells Fargo customers who

3   were sent text messages during the Class Period by comparing their call records against

4   existing customer's records.  (Kazerounian Decl. ¶ 9.)

5      Taken together, the costs, the rights to both sides, and delays of continued

6   litigation weigh in favor of preliminary approval of the proposed Settlement.

7      **B.      The Extent of Discovery and the Stage of the Proceedings**

8      In regards to class action settlements, "formal discovery is not a necessary ticket

9   to the bargaining table where the parties have sufficient information to make an

10  informed decision about settlement." Linney v. Cellular Alaska P'ship, 151 F.3d 1234,

11  1239 (9th Cir. 1998) (internal quotations omitted).

12     Here, the Parties appear to have engaged in substantial discovery.  In addition

13  to participating in formal discovery (including the exchange of requests or admissions,

14  interrogatories, and document requests), the Parties engaged multiple lengthy direct

15  negotiations, as well as a full day of mediation before Honorable Leo S. Papas (ret.).

16  (Kazerounian Decl. ¶ 5.)

17     In addition, the Parties engaged in informal discovery (id. ¶ 4), followed by

18  confirmatory discovery to ensure that the method Wells Fargo used to ascertain Class

19  Members was appropriate and effective (id. ¶ 9).  Wells Fargo provided confirmatory

20  discovery describing the method in which it identified non-Wells Fargo customer

21  cellular telephone numbers that were sent text messages regarding its send/receive

22  money product program.  (Id.)  To do this, Wells Fargo extracted a list of unique

23  mobile numbers that received the SMS text messages at issue from its dialer, then

24  compared that list of numbers against its system of record, which stores profile

25  information for all Wells Fargo customers.  (Id.)  If the number existed in its system of

26  record, it is a customer's cellular number and thus, excluded from the Class List.  (Id.)

27     The Parties appear to have thoroughly investigated and evaluated the factual

28  strengths and weaknesses of this case and engaged in sufficient discovery to support

[12CV2999-GPC(KSC)]

1  the Settlement. Accordingly, the extent of discovery and stage of the proceedings
2  weigh in favor of preliminary approval.

3  **C.  Experience of Class Counsel**

4      Class Counsel have experience prosecuting class actions relating to privacy and
5  consumer rights, including TCPA actions, as explained above. Counsel on both sides
6  believe that this is a fair and reasonable settlement in light of the uncertainties of
7  certification and litigation. Accordingly, this factor weighs in favor of preliminary
8  approval. See Ellis v. Naval Air Rework Facility, 87 F.R.D. 18 (N.D. Cal. 1980); In
9  re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The
10 recommendations of plaintiffs' counsel should be given a presumption of
11 reasonableness." (internal quotations omitted.))

12 **D.  The Amount Offered in Settlement**

13      A settlement is not judged against only the amount that might have been
14 recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of
15 the damages sought to be fair and reasonable. Linney, 151 F.3d at 1242. There is a
16 "range of reasonableness" in determining whether to approve settlements "which
17 recognizes the uncertainties of law and fact in any particular cause and the concomitant
18 risks and costs necessarily inherent in taking any litigation to completion." Frank v.
19 Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting Newman v. Stein,
20 464 F.2d 689, 693 (2d. Cir. 1972)). The adequacy of the amount recovered must be
21 judged as "a yielding of absolutes…Naturally, the agreement reached normally
22 embodies a compromise; in exchange for the saving of cost and elimination of risk, the
23 parties each give up something they might have won had they proceeded with
24 litigation." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 624 (9th Cir.
25 1982) (internal quotations omitted). "It is well-settled law that a cash settlement
26 amounting to only a fraction of the potential recovery will not *per se* render the
27 settlement inadequate or unfair." Id. at 628.

28      Here, the Complaint alleges: (1) negligent violation of the TCPA; and (2)

[12CV2999-GPC(KSC)]

knowing and/or willful violation of the TCPA. The TCPA provides for statutory damages of $500 for each negligent violation and $1,500 for each willful violation. The maximum exposure for Defendants, based on 76,189 non-Wells Fargo customers that were sent text messages via an ATDS, at a negligent statutory violation of $500 per text message, is approximately $38 million.

Wells Fargo has agreed to establish a Settlement Fund in the amount of $950,000. (SA § 5.01.) Class Counsel intends to apply to the Court for an award of attorneys' fees, costs, and expenses to be paid from the Settlement Fund, including: (1) attorneys' fees not to exceed the amount of $237,500 (Kazerounian Decl. ¶ 19; SA § 6.01); (2) costs of litigation incurred by class counsel, estimated at $25,000 (id. ¶ 19; SA § 6.01); (3) costs of claims administration, including costs of notice, estimated at $100,000 (Mullins Decl., Ex. B; SA § 6.01); and (4) an incentive payment to the Class Representative Reza Barani not to exceed the amount of $1,500. (Kazerounian Decl. ¶ 19; SA § 6.02.)

The Class Members will be paid a pro rata amount for their approved claims, with the amount paid for each claim dependent upon the total dollar amount of all Approved Claims as well as the Settlement Costs deducted from the Settlement Fund equally. (SA § 5.02.) Each Settlement Class Member shall be entitled to make only one claim per cellular telephone number, regardless of the number of text messages received by each cellular telephone number. (Id. § 10.01.) As explained above, if each of the 76,189 eligible claimants filed claims, they would receive approximately $7 each.[1] However, if only 5% of the eligible claimants filed claims, they would receive

---

[1]The Court questions whether $7 per claimant is fair and reasonable. See Arthur v. Sallie Mae, Inc., No. 10cv198-JLR, 2012 WL 4075238, at *1 (W.D. Wa. Sept. 17, 2012) (class claimants to receive over $100 each); Bellows v. NCO Fin. Sys., No. 07cv1413-W(AJB), 2008 WL 5458986, at *7 (S.D. Cal. Dec. 10, 1008) (class claimants to receive $70); Lo v. Oxnard European Motors, LLC, No. 11cv1009-JLS(MDD), 2011 WL 6300050, at 5 (S.D. Cal. Dec. 15, 2011 (class claimants anticipated to receive a minimum of $131.69); and Lemieux v. Global Credit & Collection, Case No. 08cv 1012-IEG(POR), Dkt. No. 46 (S.D. Cal. Sept. 20, 2011) (class claimants to receive $70.) However, once the number of claimants are determined, the Court will be able to determine whether the settlement amount is fair

[12CV2999-GPC(KSC)]

1    approximately $156 each.

2         In addition, the Class Members will benefit from Wells Fargo's new procedures

3    to ensure future compliance with the TCPA by eliminating the use of text messages for

4    payment notification to non-customers as a part of its send/receive money program.

5    (Kazerouian Decl. ¶ 21.)  Instead, if a customer wishes to send funds using a mobile

6    phone number, one of several notification sequences occurs.  (Id.)  If the cellular

7    number is registered to a Wells Fargo customer, the payee will be notified via e-mail

8    or via a secure online message center of the payment.  (Id.)  If the wireless number

9    belongs to a non-Wells Fargo customer that is registered with clearXchange, Wells

10   Fargo will notify clearXchange of the payment and clearXchange will contact its

11   member bank to notify the payee of the payment. (Id.)  If the number belongs to a

12   non-Wells Fargo and non-clearXchange customer, Wells Fargo's website will prompt

13   its customer to enter an e-mail address instead. (Id.)  These procedures were largely

14   developed and implemented after the Complaint was filed in December 2012.  (Id.)

15        In addition, the Settlement provides that in the event that there are uncashed

16   settlement checks 210 days after the Effective Date of the Final Approval Order, those

17   amounts remaining in the Settlement Fund for the uncashed checks shall be provided

18   to a cy pres recipient, to be agreed upon by the parties and approved by the Court.  (SA

19   § 8.05(f).)  In Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir. 2012), the Ninth Circuit

20   held that "[t]o avoid the 'many nascent dangers to the fairness of the distribution

21   process,' we require that there be 'a driving nexus between the plaintiff class and the

22   cy pres beneficiaries.'"  Id. at 865.  This "'driving nexus' between the class and the cy

23   pres beneficiaries…is more than a simple alignment of interest.  'Nexus' implies that

24   there be an actual connection, not just between the class and the cy pres beneficiary."

25   In re Groupon, Inc. Mktg. & Sales Practices Litig., Case No. 11-MD-2238 DMS

26   (RBB), Docket No. 97, at *15 (S.D. Cal. Sept. 28, 2012); see also Nachshin v. AOL,

27   LLC, 663 F.3d 1034, 1036 (9th Cir. 2011).  The parties are cautioned that there must

28   ———————————————

     and reasonable.

1   be a driving nexus between the class and the cy pres beneficiary.

2       The Settlement award that each class member will receive is fair, appropriate,
3   and reasonable given the purposes of the TCPA and in light of the anticipated risk,
4   expense, and uncertainty of continued litigations, as discussed above.  In addition, the
5   proposed Settlement may be acceptable even though it amounts to only a small
6   percentage of the potential recovery that might be available to class members at trial.
7   See Nat'y Rural Tele Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004);
8   In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).  Accordingly, the
9   Court finds the amounts offered in the settlement to be adequate, at least at this stage
10  of the proceedings.  See e.g., Arthur v. Sallie Mae, Inc., 2012 WL 4075238 (W.D.
11  Wash. Sept. 17, 2012) (approving a TCPA settlement of $24.15 million where
12  7,880,040 text messages were sent); Gutierrez v. Barclays Grp., No. 10-CV-1012,
13  Docket No. 58 (S.D. Cal. Mar. 12, 2012) (approving a TCPA settlement of $8.2 million
14  where 66,000 text messages were sent); Kramer v. Autobytel, Inc., No. 10-CV-2722,
15  Docket No. 148 (N.D. Cal. Jan. 27, 2012) (approving a TCPA settlement of $12.2
16  million where over 47,000,000 text messages were sent).

17       **E.    Collusion Between the Parties**

18       The collusion inquiry concerns the possibility that the Settlement Agreement is
19  the result of either the negotiators' overt misconduct or improper incentives for certain
20  class members at the expense of other members of the class.  Stanton, 327 F.3d at 960.
21  Here, there is no evidence of misconduct.  The Court will focus only on the aspects of
22  the Settlement that lend themselves to self-interested action.

23       Class counsel will request an incentive award for Class Representative Reza
24  Barani not to exceed $1,500. (SA § 6.02.)  Reza Barani understands the obligation of
25  serving as class representative, has adequately represented the interests of the putative
26  class, and has retained experienced class counsel. (Kazerounian Decl. ¶ 37; Swigart
27  Decl.  31; Barani Decl. ¶ 8.)  The proposed Class Representative enhancement does
28  not appear to be the result of collusion.

In addition, the attorneys' fees do not appear to be the result of collusion.  It is permissible for plaintiffs to simultaneously negotiate the merits of the action and attorneys' fees.  Stanton, 327 F.3d at 971.  Here, the Settlement provides that Class Counsel may apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, or $237,500.  (SA § 6.01.)  In addition, Class Counsel intends to request that their costs and expenses be paid from the Settlement Fund, which will include: (1) the costs of litigation, estimated to be $25,000 (Kazerounian Decl. ¶ 19); and (2) any costs of notice and claims administration costs, estimated by the ILYM Group to be $100,000.  (SA § 8.03; Mullins Decl., Ex. B.)

"[T]he choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable."  Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000).  In addition, the "benchmark" for recovery of attorneys' fees is 25%.  Id. at 1256-57.  The Court has reservation about the substantial recovery of attorneys' fees sought by Plaintiff's counsel.  However, the Court need not decide this issue at this time.  At this point, the Court merely notes that 25% recovery does not appear to be the result of collusion.

For the above reasons, the Court GRANTS preliminary approval of the proposed settlement.

## III.    APPOINTING CLASS COUNSEL

The choice of counsel has traditionally been left to the parties, "whether they sue in their individual capacities or as class representatives."  In re Cavanaugh, 306 F.3d 726, 734 (9th Cir. 2002) (internal quotations omitted).  Here, Class Counsel have experience prosecuting class actions relating to privacy and consumer rights, including TCPA actions, as discussed above.  Accordingly, because Plaintiff's counsel appears to be competent to represent the classes, the Court GRANTS Plaintiff's motion to appoint Abbas Kazerounian of Kazerouni Law Group, APC and Joshua Swigart of Hyde & Swigart as class counsel.

/ / / /

## IV.   APPOINTING THE CLAIMS ADMINISTRATOR

The Parties propose that the Court appoint the ILYM Group as the Claims Administrator. (SA § 8.01.)  The ILYM Group specializes in providing administrative services to class action litigation and has experience in administering consumer protection and privacy class action settlements.   (Kazerounian Decl. ¶ 12.) Accordingly, the Court GRANTS Plaintiff's motion to appoint the ILYM Group as the claims administrator.

## V.   APPROVING CLASS NOTICE

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Moreover, the Class Notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (v) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed notice provides: (1) information on the meaning and nature of the Class; (2) the terms and provisions of the proposed settlement; (3) the costs and fees to be paid out of the Settlement Fund; (4) the procedures and deadlines for submitting claim forms, objections, and/or requests for exclusion; and (5) the date, time and place of the Final Approval Hearing.  (See Kazerounian Decl., Exs. B, C, D, E.) In addition, the methods of Notice, more fully set forth below are reasonable.

## CONCLUSION

## THEREFORE IT IS HEREBY ORDERED:

1.   JURISDICTION:  The Court has jurisdiction over the subject matter of the Action and over all settling parties hereto.

[12CV2999-GPC(KSC)]

2.     PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT:  The Court preliminarily finds that the Settlement of the Action, on the terms and conditions set forth in the Agreement, including all exhibits thereto, is in all respects, fundamentally fair, reasonable, adequate, and in the best interests of the Settlement Class Members, taking into consideration the benefits to Settlement Class Members; the strengths and weaknesses of Plaintiff's case; the complexity, expense, and probable duration of further litigation, and the risk and delay inherent in possible appeals.  The Court finds that the Notice of the Settlement should be given to persons in the Settlement Class and a full hearing should be held on approval of the Settlement.

3.     CAFA NOTICE:  In compliance with the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, and as set forth in the Agreement, the ILYM Group shall serve written notice of the proposed settlement on the U.S. Attorney General and the Attorney General of each state.

4.     CLASS MEMBERS:  Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), the Action is hereby preliminarily certified, for settlement purposes only, as a class action on behalf of the following Class Members:

a.     The Class consists of all wireless phone subscribers and users within the United States of America, who received any text message/s from Defendant in connection with, or as a result of, its send/receive money product program, who were not customers of Defendant at the time the text/s were sent, which text messages were sent during the Class Period.

b.     Excluded from the Class are Defendant, their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to who the Action is assigned, and any member of those judges' staffs and immediate families.

5.     CLASS REPRESENTATIVE AND CLASS COUNSEL APPOINTMENT: For purposes of the Court considering preliminary approval, the Court appoints Plaintiff Reza Barani as the Class Representative and Abbas Kazerounian of Kazerouni

Law Group, APC and Joshua B. Swigart of Hyde & Swigart as class counsel.

6. <u>NOTICE AND CLAIMS PROCESS</u>: The Court approves the form and method of Notice as set forth in the Settlement Agreement. Wells Fargo shall provide the Class List for those Settlement Class Members whose cellular telephone numbers were identified from its databases to the Claims Administrator, The ILYM Group, and Class Counsel. The ILYM Group shall mail a postcard-type Direct Mail Notice to each known Class Member at the address obtained through a reverse directory lookup, and update those addresses for which a postcard is returned with a forwarding address. The Direct Mail Notice and the Publication Notice shall reference a website established for this Settlement, and that website shall contain the full details of the Settlement and permit the filing of claims on the website. The mailed and published notices shall also contain the Claims Administrator's toll free telephone number so that Class Members can inquire about the Settlement and make a claim over the telephone. At least ten (10) days prior to the Final Approval Hearing, the Claims Administrator shall file a declaration of compliance with the notice procedures set forth in the Agreement. The Court finds that the form and methods of Notice set forth in the Agreement satisfies the requirements of Federal rule of Civil Procedure 23(c)(2)(B), due process, and constitutes the best practicable procedure under the circumstances.

7. <u>SETTLEMENT AND CLAIMS PROCESS</u>: The Court preliminarily approves the $950,000 Settlement as fair, reasonable and adequate for members of the class. The Court preliminarily approves the process set forth in the Agreement for reviewing, approving and paying claims from the Settlement Fund on a pro rata basis, after deducting Settlement Costs.

8. <u>CLASS CERTIFICATION</u>: The Court preliminarily finds that the Action satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23, for purposes of settlement only.

9. <u>EXCLUSIONS</u>: Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Claims Administrator,

postmarked no later than ten (10) days after the last date to file claims.  The Claims Administrator's address shall be provided in the Direct Mail Notice to the Class Members and shall be posted on the website.  The Claims Administrator shall provide a list of those persons requesting exclusion to Class Counsel and Defendant's counsel after the deadline for exclusions passes, but no later than ten (10) days prior to the Final Approval Hearing.  A copy of that list will be filed with the Motion for Final Approval of the Class Action Settlement.

10.    To be effective, a written request for exclusion must contain the Class Member's full name, address, telephone number, and be signed by the Class Member. The request must also state generally that the person wishes to be excluded from the Settlement.

11.    Any Class Member who submits a valid and timely request for exclusion shall not be a member of the Settlement Class, and shall not be bound by the Settlement Agreement.

12.    OBJECTIONS:  Any Class Member who intends to object to the fairness of the Settlement must file a written objection with the Court, at United States District Court, Southern District of California, Office of the Clerk, 333 West Broadway, Suite 420, San Diego, CA 92101, no later than ten (10) days after the last date to file claims. Further, any such Class Member must within the same period, provide a copy of the written objection to Class Counsel and Defense counsel, whose addresses shall be set forth in the website's Notice advising the Class Members about objections.

13.    To be considered, the written objection must be signed by the Class Member and state: the Class Members full name, address, telephone number, the reasons for objecting, and whether the objector intends to appear at the Final Approval Hearing on their own behalf or through counsel.  Further, the Class Member must attach to the written objection any documents supporting the objection.

14.    Any Class Member who does not file a valid and timely objection to the Settlement shall be barred from seeking review of the Settlement by appeal or

1    otherwise.

2        15.    FINAL APPROVAL HEARING:  The Court shall conduct a hearing

3    (hereinafter the "Final Approval Hearing") on **September 19, 2014 at 1:30 p.m.** at 221

4    West Broadway, Courtroom 2D, San Diego, CA 92101.  The Final Approval Hearing

5    may be rescheduled or continued by the Court without further notice to the Class

6    Members.  At the hearing, the Court will consider the following issues:

7            a.    Whether this Action satisfies the applicable prerequisites for class

8    action treatment for settlement purposes under Federal Rule of Civil Procedure 23;

9            b.    Whether the proposed settlement is fundamentally fair, reasonable,

10   adequate, and in the best interest of the Settlement Class Members and should be

11   approved by the Court;

12           c.    Whether the Final Judgment and Order of Dismissal With Prejudice,

13   as provided under the Agreement, should be entered, dismissing the Action with

14   prejudice and releasing the Released Parties;

15           d.    Such other issues, as the Court deems appropriate.

16       16.    Attendance at the Final Approval Hearing is not necessary.  Settlement

17   Class Members need not appear at the hearing or take any other action to indicate their

18   approval of the proposed class action Settlement.  However, Settlement Class Members

19   wishing to be heard are required to indicate in their written objection whether they

20   intend to appear at the Final Approval Hearing.

21       17.    If the Agreement is not finally approved for any reason, then this order

22   shall be vacated, the Agreement shall have no force and effect, and the Parties' rights

23   and defenses shall be restored, without prejudice, to their respective positions as if the

24   Agreement had never been executed and this order never entered.

25   / / / /

26   / / / /

27   / / / /

28   / / / /

1        18.    The hearing on Plaintiff's Unopposed Motion for Preliminary Approval,

2    currently set for **April 11, 2014** is **VACATED**.

3        IT IS SO ORDERED.

4

5    DATED:  April 9, 2014

6

7                                            HON. GONZALO P. CURIEL
                                             United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28